William L. Ghiorso, OSB# 902706
Ghiorso Law Office
494 State Street, Suite 300
Salem, Oregon 97302
Telephone: (503) 362-8966
Bill@ghiorsolawoffice.com
Attorney for Plaintiff

William D. Brandt, OSB# 720366
William D. Brandt, P.C.
494 State Street, Suite 300B
Salem, Oregon 97302
Telephone: (503) 485-4168
Bill@brandtlawoffices.com
Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JENNY LECOMPTE, as Parent and General Guardian of CONNOR LECOMPTE, a Minor Child,<br><br>                                              Plaintiffs,<br><br>v.<br><br>SPRINGFIELD SCHOOL DISTRICT 19, an Oregon school district created and operating under the laws of the State of Oregon; SUSAN RIEKE-SMITH, as Superintendent of Springfield Public Schools and individually; JEFFREY FULLER, as Principal of Agnes Stewart Middle School and individually; EJ ROTHERHAM, as Vice Principal of Agnes Stewart Middle School and individually; BRIAN MEGERT, as Springfield Director of Special Education and individually; and GREG HOWELLS, as Special Education Teacher at Agnes Stewart Middle School and individually.<br><br>                                              Defendants. | **Case No.** 6:18-cv-00519<br><br><br>**COMPLAINT**<br><br>**Individuals with Disabilities Education Act (IDEA)**<br><br>PUNITIVE DAMAGES REQUESTED<br><br>JURY TRIAL DEMANDED<br><br>NOT SUBJECT TO MANDATORY ARBITRATION |

## PRELIMINARY STATEMENT

**1.**    COMES NOW, plaintiff Jenny LeCompte, asserting her own claims and the claims of her minor son, C.L., by and through her attorneys William L. Ghiorso and William D. Brandt, and brings this Complaint alleging that the Springfield Public School District No. 9, Springfield Public Schools Superintendent, Springfield Public School District Administrators, and Springfield Public School District Staff (collectively hereinafter, "SPSD," or "defendants") committed grave and egregious failures in their responsibilities and duties owed and violated the various rights of plaintiff and her minor son, C.L., as more specifically pled herein.

**2.**    Plaintiff seeks the following forms of redress: (i) injunctive relief, in the form of appropriate, adequate, suitable educational opportunities for the plaintiff's minor son C.L., to meet his educational requirements and special needs, while further assuring his emotional and academic welfare; (ii) monetary compensation for the claims asserted herein, in the form of reimbursement for expenses that the plaintiff will incur in providing the proper and necessary education of her son, C.L., (iii) monetary damages, including punitive damages, for plaintiff's pain and suffering, including the psychological and emotional harm, mental anguish, and emotional distress caused to plaintiff, as a result of the defendant's treatment of the plaintiff's minor son C.L., in light of his developmental disabilities; and (iv) monetary damages in an amount to be determined by a jury, for C.L.'s invaluable losses of educational opportunity, impairment of learning, physical and psychological trauma, post-traumatic stress disorder, humiliation, and pain and suffering, all resulting from the defendants' individual and collective transgressions.

**PARTIES**

**3.**     Plaintiff and C.L. are both citizens of the State of Oregon. At all times material hereto, C.L. was a pupil at Agnes Stewart Middle School, a public middle school in SPSD. It is uncontroverted that C.L. is considered a "student with a disability," as defined by §504 of the Rehabilitation Act of 1973. C.L. lives with his mother, the plaintiff in this case, in Lane County in the State of Oregon.

**4.**     C.L. was diagnosed with Autism Spectrum Disorder, Obsessive Compulsive Disorder, Anxiety, and Attention Deficit Hyperactivity Disorder. As described above, C.L. has trouble talking to others, communicating his feelings or emotions, is delayed socially, and is unaware of many expectations and standards for his peer group.

**5.**     C.L. has been accepted by SPSD as a "student with a disability," as defined by §504 of the Rehabilitation Act of 1973. C.L. is also considered to be a student with a disability pursuant to the Americans with Disabilities Act of 1990. C.L. is eligible under Section 504 and for Special Education and Related Services under IDEA by meeting criteria for the eligibilities of Autism and other impairment.

**6.**     Defendant SPSD is a school district organized under the laws of the State of Oregon and at all times was responsible for the care, management, and control of all public school business within its jurisdiction as to C.L., the adoption and implementation of policy, the hiring and firing of SPSD employees, the training of teachers, the supervision of staff students, the course of study, and the implementation of the educational program.

**7.**     Defendant Susan Rieke-Smith is a current or former employee of SPSD, whom at all relevant times herein was employed at SPSD as Superintendent of SPSD, and as such, she is responsible for the administration of education and the assurance of the implementation of

protections afforded to students with disabilities to be free from retaliation, harassment, interference, assault, battery, and discrimination due to status of disability. Defendant Susan Rieke-Smith is sued both individually and in her official capacity for her acts within the scope of her employment with SPSD.

8.    Defendant Jeffrey Fuller is a current or former employee of Agnes, whom at all relevant times herein was employed at SPSD as Principal of Agnes. Defendant Jeffrey Fuller was and/or is responsible for the oversight, implementation of the hiring, training, and monitoring of all staff at Agnes, including teachers, special education administrators, staff and support staff, and is sued both individually and in his official capacity for his acts within the scope of his employment with SPSD.

9.    Defendant Brian Megert is a current or former employee of SPSD, whom was employed at SPSD at all times relevant herein as the Director of Special Education, and as such, was responsible for the administration of special education, the provision of special education services for students with disabilities in SPSD, and was therefore responsible for the implementation of C.L.'s accommodations and modifications and is sued both individually and in his individual capacity.

10.    Defendant E.J. Rotherham is a former employee of SPSD, as the Vice Principal of Agnes, and as such, was responsible for the oversight and implementation of training and monitoring of all staff at Agnes, including teachers, special education administrators, staff and support staff, and is sued both individually and in her official capacity.

11.    Defendant Greg Howells is a current or former employee of Agnes, whom at all relevant times herein was employed at SPSD as a Special Education Teacher, and was assigned to work directly with C.L. and therefore was responsible for the implementation of C.L.'s IEP,

accommodations and modifications and responsible for accurately documenting and/or reporting progress and/or lack thereof, and is sued both individually and in his official capacity.

## FACTS SUPPORTING ALL CLAIMS

**12.**     This case concerns the bullying and assault of a special-needs student in violation of federal statutes and state common law because of certain egregious failures of duty on the part of the above named defendants.

**13.**     Plaintiff's son, C.L., was a student at Agnes Stewart Middle School (hereinafter "Agnes"). Commencing with C.L.'s attendance at Agnes for the 2016-2017 school year, C.L. began returning home to plaintiff with symptoms of what was later discovered to be physical and psychological trauma, caused by the bullying C.L. experienced at Agnes while under defendants' supervision and care.

**14.**     C.L.'s disability makes communication with others difficult, so C.L. was not able to explain to plaintiff what was causing C.L.'s symptoms. Plaintiff was able to determine that C.L. was in a great amount of pain and distress, and that C.L.'s symptoms were beginning to worsen as the school year progressed. C.L.'s physical symptoms began with serious abdominal pain, preventing regular day-to-day function. Prior to these events, C.L. was functioning well, and was able to manage his routine without heavy medication or medical intervention.

**15.**     C.L.'s condition continued to worsen without any sign of improvement. During the time that plaintiff was bringing C.L. to his Doctor and struggling to determine the cause of his condition, plaintiff repeatedly emailed, called, and met with Agnes staff about her son. Plaintiff kept Agnes staff fully informed about her son's condition and plaintiff's inability to determine what was causing C.L.'s symptoms. Defendants routinely communicated to plaintiff that they did

not have any information that would aid plaintiff in figuring out what was causing C.L.'s symptoms.

16.    On October 26, 2016, C.L.'s condition became so severe that plaintiff had to transport C.L. to a hospital for emergency medical attention. C.L.'s abdominal pain had progressed to include sharp chest pains, migraines, and several other serious physical symptoms. C.L. also exhibited signs of extreme anxiety, frustration, and severe panic attacks. Doctors were not able to determine the cause of C.L.'s condition at that time.

17.    Immediately following C.L.'s hospital visit, plaintiff notified defendants that C.L.'s condition had worsened to the point that C.L. now required nearly constant medical care and supervision. Plaintiff notified defendants that she could not bring C.L. back to the school due to his symptoms, and that plaintiff strongly desired to discover the cause of C.L.'s condition. Defendants did not provide plaintiff with any information that could have aided plaintiff in determining the cause of C.L.'s symptoms at that time.

18.    At a Doctor's visit on or about November 7, 2016, C.L. was able to communicate to medical staff that he had been experiencing bullying at the hands of classmates since the beginning of the 2016 school year, which included repeated punching of C.L.'s abdomen. C.L. communicated to doctors that the bullying involved both physical and emotional abuse. The physician learned that the abuse would take place in the library at Agnes, in the cafeteria at Agnes, and in several other locations that defendants were responsible for supervising. At that time, C.L.'s physician began running tests for internal organ damage, such as an ultra sound and an x-ray. After the physician obtained the test results, C.L. was admitted to the hospital for a four-day stay on November 18, 2017.

**19.**    After plaintiff learned about the bullying, plaintiff immediately contacted defendants for an explanation and to demand any information that defendants had about any incidents involving her son and bullying at Agnes. It was only at that time that defendants finally communicated to plaintiff that they had actually witnessed her son being physically abused while under the supervision of Agnes staff. Defendants communicated that they did not believe the incident to be serious at the time. Despite plaintiff's repeated attempts to investigate the cause of her son's symptoms, it was not until C.L. required emergency medical attention that defendants finally communicated to plaintiff that they had witnessed one of several events that led to C.L.'s current medical condition. To this day, defendants have still not provided the incident report to plaintiff describing the bullying on October 26, 2017.

**20.**    After plaintiff discovered the bullying that had been taking place under defendants' supervision, defendants assured plaintiff that they had separated C.L. from any known bullies and that it was safe for C.L. to return to school. After C.L.'s condition became more manageable, C.L. began returning to school for shorter periods of time during the day. C.L. would return home for plaintiff to supervise his condition and his medical care.

**21.**    Despite defendants' reassurances, plaintiff eventually learned that Agnes staff had not been arriving at the school as early as the students. As a result, C.L.'s bus would drop him off outside of the front of the school, and C.L. would have to wait until Agnes staff arrived and unlocked the doors. Eventually, C.L. began to encounter known bullies outside of the school in the mornings.

**22.**    On or about January 10, 2017, defendants notified plaintiff that another incident occurred between C.L. and the same student that defendants had witnessed physically abusing C.L. at Agnes in October of 2016. Defendants explained that a "mix-up" had left C.L.

completely unsupervised, allowing the bully to seek out C.L.'s location and continue the above-described harmful conduct against C.L. Plaintiff also learned that Agnes staff had started seating C.L. with known bullies at school breakfast, further contributing to C.L.'s anxiety and further exacerbating C.L.'s condition.

**23.**    The defendants' conduct during the above-described events enabled the bullying and harassment that caused C.L.'s condition to become so severe that C.L. may now face permanent injury and disfigurement. The defendants' conduct exhibited a gross indifference to the various rights of a child with disabilities. As a result of defendants' failures to prevent C.L. from experiencing physical and psychological abuse, C.L. has now had to start taking psychotropic medications again, and is now forced to endure invasive, stressful, and painful medical procedures to treat his condition. Defendants' above-described conduct was the proximate cause of C.L.'s permanent injuries. If defendants had acted prudently and consistent with their own policies for bullying and supervision, C.L. would have been spared the abuse that ultimately led to his ongoing pain and suffering.

**24.**    It is undisputed that C.L. is an obvious target for bullying because he has limited social skills and limited ability to defend himself. This knowledge in conjunction with the instances of misconduct witnessed by SPSD requires the affirmative duty of SPSD to protect C.L. by providing appropriate supervision. The failure of SPSD to take action against the bullying to prevent future harm from occurring is proof of their negligence, gross mismanagement and deliberate indifference. The special relationship involved between SPSD staff and C.L. requires great care to ensure C.L.'s safety and supervision.

**25.**    Defendants, jointly and severally, and by and through the policies, procedures, practices, and customs, failed to keep C.L. safe in the manner and particulars noted herein and caused him

to be bullied and/or mentally and physically abused, and/or failed to prevent him from being bullied and/or mentally and physically abused. Defendants failed to properly train and inform staff of the signs of physical and emotional trauma for students. Defendants failed to properly train and inform staff of the proper manner in which to supervise and care for developmentally disabled students. Defendants failed to properly train and inform staff of the proper manner in which to prevent the bullying, harassment, and discrimination of students with disabilities..

**26.**     As a direct result of the physical and mental abuse of C.L., C.L. experienced pain and suffering, severe mental anguish, educational harm, substantial social fear and regression, which requires and will continue to require substantial treatment and expense and which will continue to cause severe mental anguish in the future, which will continue to require future expense of therapy and special programs to deal with the suffering that C.L. experiences daily as a result of the abuse that occurred at SPSD.

**27.**     Plaintiff seeks damages and compensation as the guardian and parent of C.L. for the injuries more fully discussed below. Plaintiff brings this action pursuant to Title 42 of the United States Code, Section 1983, for violations of the 14th Amendment of the United States Constitution (hereinafter referred to as "14th Amendment"); and for violations of § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) (hereinafter referred to as "Rehabilitation Act"); and the Americans with Disabilities Act, 42 U.S.C. § 12101 (hereinafter referred to as "ADA"). Plaintiff also brings forth state claims for negligence, gross negligence, breach of fiduciary duty, and premises liability.

**28.**     Plaintiff reserves the right to amend plaintiff's Complaint if new claims arise as the facts develop. C.L. is still being treated for his injuries and the outlook remains uncertain. C.L. may be left permanently disabled as a direct result of defendants' actions and omissions alleged herein.

**JURISDICTION**

**29.**    Jurisdiction is conferred upon this Court pursuant to the Americans with Disabilities Act, 42 USC § 12101 et seq.; Section 504 of the Rehabilitation Act of 1973, 20 USC § 1400, and 42 USC §1983, 28 U.S.C.A. §§ 1331 and 1343 because matters in this controversy arise under the Fifth and Fourteenth Amendments to the United States Constitution and the laws of the United States. Further, this Court has pendant jurisdiction to adjudicate any state claims which arise out of the same facts as the federal claims asserted herein.

**30.**    Additionally, this Court has jurisdiction pursuant to § 504 of the Rehabilitation Act of 1973 to award attorneys' fees and costs to plaintiff.

**VENUE**

**31.**    Under 28 U.S.C. § 1391, venue is proper before this Court because each of the defendants resides, transacts business, is found, and has agents in this District and because a substantial part of the events and omissions giving rise to the plaintiff's claims occurred in this district.

**STATE ACTION**

**32.**    Defendants were at all times and in all matters acting under color of state law when, by conscious and deliberate indifference, Defendants permitted C.L. to be subjected to the wrongs and injuries set forth herein.

**33.**    SPSD is a policy-maker for itself. As such, SPSD acted under color of law for the purposes of formulating the policies, practices, and procedures for the school during the events that made the basis of this litigation. Several SPSD staff made policy choices that adversely

affected C.L. with deliberate indifference to, and in violation of, C.L.'s various rights as more specifically described herein.

## I.    FIRST CLAIM FOR RELIEF: VIOLATION OF 42 U.S.C. § 1983, 5th and 14th AMENDMENTS

**34.**    Plaintiff incorporates by reference all the above related paragraphs with the same force and effect as if herein set forth.

**35.**    Title 42 of United States Code, section 1983 provides for damages in a civil action based upon the deprivation of rights guaranteed by the United States Constitution.

**36.**    The 14th Amendment of the United States Constitution protects individuals from the state's depriving individuals of, "life, liberty, or property, without due process if law; nor deny any person within its jurisdiction the equal protection of the laws." U.S. Amend. XIV.

**37.**    Defendants, acting under color of law and acting pursuant to SPSD'S customs and policies, deprived C.L. of rights and privileges secured to him by the 5th and 14th Amendments, by failing to follow and enforce its policies that were supposed to protect C.L. from harm, by tolerating numerous violations of those policies, and by failure to take adequate corrective action after becoming aware of injuries resulting from misconduct towards C.L. and other students in the same or similar condition.

a)    Plaintiff contends that Springfield School District had a custom, policy, practice, and/or procedure in place that permitted C.L., a student with a disability, to be continuously endangered by ongoing bullying, and/or harassment. This custom, policy, practice, and/or procedure acted to the detriment of C.L., and failed to protect him from known and inherently dangerous situations.

**b)** Alternatively, plaintiff contends that SPSD failed to have policies, procedures, practices and customs in place to assure staff were correctly trained, so as to protect C.L. from known and inherently dangerous situations, and/or to assure that staff were correctly supervised and accountable for carrying out a zero tolerance bully policy, so as to protect C.L. from known and inherently dangerous situations.

**c)** Plaintiff contends that SPSD, by failing to follow and enforce its policies that were supposed to protect C.L. from harm, by tolerating violation of those policies, and by failing to follow procedure for known, severe, and repeated bullying assaults by the bullies named herein, acted with conscious indifference to C.L.'s rights.

**d)** Plaintiff contends that, with conscious disregard, SPSD staff continuously and regularly allowed the bullies to associate with C.L. and physically and mentally abuse C.L. under SPSD supervision.

**38.** Because defendants were aware of the repeated assaults and harassment, and because defendants did not take adequate corrective action to stop the bullying and harassment, they acted with conscious indifference to C.L.'s rights and the rights of other students similarly situated.

**39.** Defendants' decision to allow and enable the assault and harassment of C.L. on campus and under SPSD supervision constituted actionable physical and mental abuse in violation of clearly established law and deprived C.L. of his right to life, liberty and bodily integrity guaranteed under the 14th and 5th Amendments to the United States Constitution, for which defendants are liable to plaintiff under 42 U.S.C. § 1983 for compensatory monetary damages. The acts and omissions of defendants described within this Complaint, both above and below

this paragraph, proximately caused the injuries to C.L., physically, and mentally, which deprived C.L. of his right to life, liberty and bodily integrity guaranteed under the 14th and 5th Amendments, for which defendants are liable to plaintiff under 42 U.S.C. § 1983 for compensatory monetary damages.  Plaintiff seeks damages to the fullest extent of the jurisdictional limits for this action.

### A.    STATE-CREATED DANGERS AND DEPRIVATION OF EDUCATION

**40.**    Plaintiff incorporates by reference all the above related paragraphs with the same force and effect as if herein set forth.

**41.**    A special custodial relationship existed at all pertinent times between the defendants and C.L., a student with a disability. Accordingly, SPSD had a corresponding duty to provide C.L. a safe environment and had a duty to provide C.L. with an education.

**42.**    At all pertinent times, SPSD acted with deliberate indifference and deprived C.L. of an education to which he is entitled, because SPSD knew or should have known of the pertinent facts set forth herein to support the danger and risk of physical and mental abuse that SPSD's actions and/or omissions exposed C.L. to.

**43.**    At all pertinent times, SPSD knew of or should have known that there was a substantial risk of physical and mental abuse occurring, given these circumstances, yet SPSD failed to implement and/or enforce rules concerning C.L.'s safety and protection. C.L.'s classmates had a history of assaulting and harassing C.L., and whereby SPSD tolerated countless clear violations of policy, by:

    **a)** failing to properly investigate and/or document countless bullying complaints that SPSD witnessed or that were reported to SPSD, including but not limited to the facts

made known to SPSD regarding C.L.'s symptoms, and SPSD's failure to connect C.L.'s symptoms to instances of physical abuse that SPSD knew about and intentionally did not report to C.L.'s mother, the plaintiff.

**b)** failing to take corrective action after becoming aware of injuries resulting from misconduct towards C.L.;

**c)** by fabricating facts and reports to C.L.'s parents that corrective action was being taken, thereby intentionally creating a false sense of security to C.L.'s parents, (for example, by informing C.L.'s parents that C.L. would not have to associate or see known bullies); and

**d)** by depriving C.L. of his right and privilege to the protection of the policy, and his right and privilege to an education.

44.    Likewise, it was clear that this danger was well known to defendants. Even if defendants claim that they were entirely oblivious to the risk of bullying that disabled students are exposed to, SPSD actually witnessed instances of physical abuse against C.L. and intentionally withheld the information from C.L.'s family.

45.    SPSD's foregoing failures created a dangerous environment that, but for their conduct, would not have occurred. Additionally, C.L. had an inability to remove himself from the dangerous situation.

46.    The errors and omissions of SPSD increased the danger of physical and emotional harm to C.L., and constituted a dangerous environment comprising a state-created danger in violation of the 14th Amendment that is attributable to SPSD and for which C.L. seeks recovery under 42 U.S.C. § 1983. Plaintiff seeks damages to the fullest extent of the jurisdictional limits for this action.

**II.    SECOND CLAIM FOR RELIEF: CLAIMS PURSUANT TO THE ADA AND THE REHABILITATION ACT.**

**47.**    Plaintiff incorporates by reference all the above-related paragraphs with the same force and effect as if herein set forth.

**48.**    C.L. is considered a student with a disability pursuant to Section 504 and ADA, and due to C.L.'s status as a special education student, C.L. is a "qualified individual with a disability" as defined in 42 U.S.C. §12131(2), because C.L. has a disability that affects his major life activities; i.e., caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, learning and working, and therefore is qualified to participate in the program and likewise, has been accepted as such by SPSD.

**49.**    SPSD is a "public entity" as defined in 42 U.S.C. §12131(1), and receives federal financial assistance so as to be covered by the mandate of the Rehabilitation Act. SPSD and its schools are facilities and their operation constitutes a program and service for Section 504 and ADA purposes.

**50.**    Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 and its implementing regulations require that each state that receives disbursements, including the state's political subdivisions such as local school districts, must ensure all students with disabilities are given appropriate and necessary accommodations, pursuant to federal law and rules. To the degree that a policy or practice hinders honest consideration of a disabled child's unique needs, and fails to accommodate that child's disability and keep the student safe, it is discriminatory in violation of Section 504. Intentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuits of its questioned policies, or the wrongful administration thereof, will likely result in a violation of federally protected rights.

**51.** To prevail on a Title II claim, a plaintiff must prove that: (1) he is a qualified individual with a disability; (2) he was excluded from the benefits or services of a public entity or otherwise was discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination occurred because of his disability.

**52.** SPSD failed and refused to reasonably accommodate C.L.'s disabilities and modify its services in violation of Title II of the ADA and Section 504 by failing to provide services to C.L. that kept him from harm. Because of C.L.'s disability, defendants have failed to keep C.L. safe from harm by:

> **a)** failing to properly address C.L.'s parents concerns of C.L.'s ongoing traumatic symptoms and associate those symptoms with known instances of physical abuse experienced by C.L. and witnessed by SPSD staff; and

> **b)** failing to provide C.L. an environment that was safe, while knowing that C.L. had experienced bullying including physical and mental abuse at the hands of known bullies, and the failure to provide the safety accommodations needed to care for C.L., allowing bullies the full and open access to continue harassing and otherwise physically and mentally abusing C.L.

**53.** SPSD discriminated against C.L. on the basis of his disability by:

> **a)** Providing education services in a manner that discriminated against C.L. by denying him proper services and/or supervision; and

> **b)** Providing services to students without disabilities that kept them from harm and denying proper services to C.L. to keep him from harm. Other students without disabilities were not forced to eat breakfast with known bullies and received adequate supervision to prevent future instances of physical and/or mental abuse.

COMPLAINT                                                                                    16

**54.**     SPSD had a duty to keep to C.L. safe from harm, and SPSD failed to keep C.L. safe from harm. SPSD failed to provide C.L. an environment that was not hostile and/or unsafe. Such failures as noted above have, together and separately, contributed to violating his rights under § 504, federal rules and regulations promulgated pursuant thereto.

**55.**     Such failures causing injuries to C.L., leading to his easy exploitation, and the injuries alleged herein, and whether it be individually or in concert with the other allegations, was a violation of the ADA thereby.

**56.**     SPSD's violations of the ADA and Section 504 were proximate and/or legal causes of injuries and damages to C.L. Plaintiff seeks damages to the fullest extent of the jurisdictional limits for this action.

## III.     THIRD CLAIM FOR RELIEF: COMMON LAW NEGLIGENCE

**57.**     Plaintiff incorporates by reference all allegations in paragraphs above with the same force and effect as if herein set forth.

**58.**     The SPSD personnel allowed C.L., a special needs student, to be exposed to known risks of physical and mental abuse, and allowed C.L. to experience prolonged pain and suffering by intentionally withholding material knowledge regarding the cause of C.L.'s traumatic symptoms that were repeatedly communicated to SPSD.

**59.**     The acts and omissions of all SPSD employees and other defendants included in this Complaint, created the danger, which caused the injuries to C.L.

**60.**     Defendants owed a legal duty to plaintiff.

**61.** Defendants controlled, managed, maintained, cared for and/or operated the premises (Agnes and SPSD). As operator and manager of the premises, they owed a duty to C.L. to use ordinary care to ensure his safety. As school staff, defendants owed a legal duty to plaintiff to properly care for and supervise C.L., and protect C.L. from harm. Defendants failed to act reasonably and prudently. Specifically, defendants engaged in a negligent manner of operation of the above premises by:

**a)** Failing to properly screen and/or hire and/or train their employees;

**b)** Failing to properly supervise their employees;

**c)** Failing to properly supervise the bullying students at the school;

**d)** Failing to properly oversee the premises of the school;

**e)** Failing to adequately protect the special-needs students attending the facility;

**f)** Failing to take proper action after the incident(s) made the basis of this lawsuit occurred, including but not limited to reporting such incidents to the proper authority or communicating the incidents to C.L.'s family or doctor;

**g)** Failing to take action to prevent incidents such as the incident(s) that made the basis of this lawsuit; and

**h)** Failing to provide a safe and hazard free facility to the students of SPSD;

**i)**  Failing to appropriately care for the safety of C.L., whom SPSD knew or should have known was exposed to foreseeable and dangerous risks of physical and mental abuse, which SPSD, in undertaking its custodial and fiduciary capacity, failed to properly and adequately prevent from causing harm to C.L.

**62.**    All of the above actions or omissions by the defendants were negligent and were a proximate cause of the foreseeable damages complained of herein. Defendant's conduct was extraordinarily unreasonable in light of the circumstances and the relationship that existed between both SPSD and C.L., and SPSD and plaintiff. Plaintiff did nothing to cause or contribute to C.L.'s injuries and damages. Plaintiff seeks damages to the fullest extent of the jurisdictional limits for this action.

## IV.    FOURTH CLAIM FOR RELIEF: NEGLIGENCE PER SE

**63.**    Plaintiff incorporates by reference all the above-related paragraphs with the same force and effect as if herein set forth.

**64.**    Defendants are liable for negligence per se, for violations of rules and regulations regarding a safe education in the State of Oregon. Such negligence per se was a proximate cause of plaintiff's injuries and damages. Plaintiff seeks damages to the fullest extent of the jurisdictional limits for this action.

## V.    FIFTH CLAIM FOR RELIEF: BREACH OF FIDUCIARY DUTY

**65.**    Plaintiff incorporates by reference all the above-related paragraphs with the same force and effect as if herein set forth.

**66.**    Defendants and their agents were in a special position of trust and in a special relationship with respect to plaintiff and C.L. Defendants, in addition to being responsible for C.L.'s education, were responsible for his health and safety while under their control and supervision on a daily basis as a special-needs student. In this capacity, Defendants breached

COMPLAINT

19

their fiduciary duty by allowing C.L. to be harassed, abused both mentally and physically, and assaulted while under SPSD's care and control.

**67.**    C.L. was seriously injured as a direct and proximate result of that breach. Such misconduct was known, or with the exercise of reasonable care should have been known by defendants. Plaintiff seeks damages to the fullest extent of the jurisdictional limits for this action.

**VI.    SIXTH CLAIM FOR RELIEF: PREMISES LIABILITY**

**68.**    Plaintiff incorporates by reference all the above-related paragraphs with the same force and effect as if herein set forth.

**69.**    Defendants knew or should have known that the bullies were committing the above-described acts on its premises. The abuse suffered by C.L. occurred in and on defendants' property.

**70.**    Defendants breached the duty of care owed to C.L. as a licensee on their premises by facilitating the abuse on C.L. C.L. was seriously injured as a direct and proximate result of that breach. Plaintiff seeks damages to the fullest extent of the jurisdictional limits for this action.

**VII.    SEVENTH CLAIM FOR RELIEF: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

**71.**    Plaintiff incorporates by reference all the above-related paragraphs with the same force and effect as if herein set forth.

**72.**    Defendants had a duty to supervise and care for the physical, psychological and educational well-being of C.L.

**73.**     Defendants' conduct, as set forth in detail in the preceding paragraphs, rose to the level of extreme and outrageous conduct, which negligently placed the C.L. in jeopardy of suffering grave emotional distress and physical harm.

**74.**     Defendants knew and/or reasonably should have known that their above-described conduct, in subjecting and/or facilitating C.L.'s assault, battery, and other physical and mental abuse, and by withholding pertinent information from C.L.'s mother, and by denying educational services to the C.L., would likely cause C.L. grave emotional distress, physical symptoms, and possible long-term physical and psychological trauma.

**75.**     As a foreseeable result of the above noted outrageous conduct by the defendants, said severe emotional harm and psychological and physical trauma did in fact occur in this case, in that C.L. was debilitated to the point where he suffered and still suffers from physical symptoms from the above emotional distress, as well as episodes of anxiety, anger, loss of sleep, nightmares, depression, post-traumatic stress disorder, and panic attacks, and required and will still require the need for professional counseling and medical assistance by a psychologist and by a health care provider.

**76.**     By reason of the foregoing, C.L. has been damaged in the sum of an amount to be determined at trial. Plaintiff seeks damages to the fullest extent of the jurisdictional limits for this action.

**VIII.   EIGHTH CLAIM FOR RELIEF: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS:**

**77.**     Plaintiff incorporates by reference all the above-related paragraphs with the same force and effect as if herein set forth.

COMPLAINT

21

**78.**    All of the defendants engaged in extreme and outrageous conduct, beyond the bounds of decency and intolerable by measure of societal standards, and placed C.L. in harm's way, through such conduct as: (i) endangering C.L.'s psychological health, physical health and life, since defendants were on notice that C.L. suffered from anxiety and autistic spectrum disorder, yet defendants failed to take adequate precautions to prevent C.L. from future physical and psychological harm; and (ii) failing to notify C.L.'s family of the instances of physical abuse that SPSD had witnessed and admits to witnessing, despite knowing that C.L. was experiencing traumatic symptoms consistent with physical abuse and in the area of the body that SPSD staff had witnessed C.L.'s classmate punching; and (iii) other related conduct as set forth in this Complaint.

**79.**    When plaintiff discovered that C.L. had been enduring physical and mental abuse facilitated by SPSD, plaintiff notified SPSD about the event that she became aware of and the diagnosis of traumatic injury to her child, but by this time several months had passed which could have been used to adequately address C.L.'s physical and mental trauma, but for SPSD's intentional concealment of instances of physical abuse. Plaintiff had to undergo several months of witnessing her child suffering through extreme pain and mental anguish, which was further compounded by C.L.'s difficulty with communicating.

**80.**    Defendants knew, and reasonably should have known, that the above noted, extreme, outrageous, cruel and unlawful conduct would cause severe and extreme emotional distress, pain and suffering to the plaintiff, or to any mother and father who (i) experienced and endured the above noted course of conduct being taken against their son; (ii) experienced the emotional distress of having their son's education threatened; and (iii) experienced months of her son's enduring physical and mental anguish and suffering with no remedy due to SPSD's concealment

of facts needed for a diagnosis. Yet, the defendants proceeded to engage in their long and continuous course of such conduct, without regard for the effect upon the plaintiff.

**81.**     As a foreseeable result of the above noted outrageous conduct by the defendants, said emotional harm did in fact occur in this case, in that the plaintiff was debilitated to the point where she suffered and still suffers from physical symptoms from the above emotional distress, as well as episodes of anxiety, anger, loss of sleep, depression, and required and still requires the need for professional counseling by a psychiatrist or similar health care provider.

**82.**     By reason of the foregoing, Plaintiff has been damaged in the sum of an amount to be determined at trial. Plaintiff seeks damages to the fullest extent of the jurisdictional limits for this action.

## IX.     RATIFICATION

**83.**     Plaintiff incorporates by reference all the above-related paragraphs with the same force and effect as if herein set forth.

**84.**     SPSD ratified the acts, omissions and customs of SPSD personnel and staff. As a result, SPSD is responsible for the acts and omissions of staff persons who were otherwise responsible for the safety of C.L.

## X.     PROXIMATE CAUSE

**85.**     Plaintiff incorporates by reference all the above-related paragraphs with the same force and effect as if herein set forth.

**86.**     Each and every, all and singular, of the foregoing acts and omissions, on the part of defendants, taken separately and/or collectively, jointly and severally, constitute a direct and proximate cause of the injuries and damages set forth herein.

## XI.     DAMAGES

**87.**     Plaintiff incorporates by reference all the above-related paragraphs with the same force and effect as if herein set forth.

**88.**     As a direct and proximate result of the defendants' conduct, C.L. has suffered injuries and damages, for which he is entitled to recover herein within the jurisdictional limits of this court, including but not limited to:

**a)** Physical pain in the past and future;

**b)** Medical expenses in the past and future;

**c)** Mental anguish in the past and future;

**d)** Mental health expenses in the past and future;

**e)** Physical impairment in the past and future,

**f)** Physical disfigurement in the past and future;

**g)** Various out-of-pocket expenses incurred by the parents of C.L. but for the acts and omissions of the defendants;

**h)** Punitive and exemplary damages within the jurisdictional limits of this court; and

**i)** Attorneys' fees.

## XII.    PUNITIVE DAMAGES

**89.**    The acts and omissions of SPSD over the months that C.L. experienced the physical and mental abuse alleged herein, and after receiving repeated notice of such acts and omissions not only shocks the conscience, but also satisfies the criteria for punitive damages, as contemplated by Section 1983.

## XIII.    ATTORNEYS' FEES

**90.**    It was necessary for plaintiff to retain the undersigned attorneys to file this lawsuit. Upon judgment, Plaintiff are entitled to an award of attorney fees and costs pursuant to 42 U.S.C. §1988(b), 42 U.S.C. §794a, and 42 U.S.C. §12131 all pursuant to 42 U.S.C. §2000 et. seq.

## XIV.    DEMAND FOR JURY TRIAL

**91.**    Pursuant to Federal Rule of Civil Procedure 38(b), plaintiff demands a jury trial for all issues in this matter.

WHEREFORE, plaintiff prays for judgment against defendants, jointly and severally, in an amount sufficient to fully compensate plaintiff for the elements of damage enumerated above, judgment for punitive and exemplary damages, recovery of attorney's fees for the preparation and trial of this cause of action, and for its appeal if required, pursuant to 42 U.S.C. §1988; together with pre- and post-judgment interest, and court costs expended herein, and for such other relief as this Court deems just and proper.

DATED MARCH 27, 2018.

*s/ William D. Brandt*
William D. Brandt, OSB# 720366
William D. Brandt, P.C.
494 State Street, Suite 300B
Salem, Oregon 97302
Telephone: (503) 485-4168
Bill@brandtlawoffices.com
Attorney for Plaintiff

*s/ William L. Ghiorso*
William L. Ghiorso, OSB# 902706
Ghiorso Law Office
494 State Street, Suite 300
Salem, Oregon 97302
Telephone: (503) 362-8966
Bill@ghiorsolawoffice.com
Attorney for Plaintiff